**YOUNG et al. v. CAMPBELL et al.**

No. 21015. Opinion Filed July 6, 1932.

Rehearing Denied Nov. 22, 1932.

J. J. Henderson, for plaintiffs in error.

H. F. Fulling, for defendants in error.

ANDREWS, J. This is an appeal from an order of the district court of Tulsa county, denying two certain motions, as amended, to vacate a judgment of that court. The plaintiffs in error were the defendants in the trial court and the defendants in error were the plaintiffs in that court. Hereinafter the parties will be referred to as plaintiffs and defendants.

The record discloses that Jacob Young died intestate, without issue, the owner of certain real estate and leaving surviving

him as his sole and only heirs at law, his mother, Polly Young, and his wife, Carrie Young. Thereafter Carrie Young procured a quitclaim deed to the land from Polly Young. Thereafter Carrie Young conveyed to Dora M. Lausen 50 acres of the land. Thereafter Polly Young died intestate leaving surviving her the plaintiffs, who were her sole and only heirs at law. Two of the plaintiffs are the children of the said Polly Young, and the other plaintiffs are the children of Polly Johnson, who was a daughter of the said Polly Young.

On August 10, 1928, the plaintiffs commenced their action in the district court of Tulsa county. Four of them were minors and joined in the action by their guardian and next friend. In their petition the plaintiffs alleged that the deed from Polly Young to Carrie Young was invalid for the reason that there was no consideration therefor, and for the reason that Polly Young, at the time of the execution of the deed, was of unsound mind and incapable of making a deed or entering into a contract. The prayer was for possession of an undivided one-half interest in the land. There was a second cause of action with a prayer to quiet the title, and a third cause of action with a prayer for a partition of the land.

Dora M. Lausen was made a defendant in the action. No service was had upon her. She made a voluntary appearance therein. On the 24th day of October, 1929, a judgment was rendered against the plaintiffs and in favor of Dora M. Lausen on her cross-petition after a finding by the court that she paid a valuable consideration for and was an innocent purchaser of the 50 acres of land claimed by her by virtue of her deed from Carrie Young. From that judgment no appeal was taken. In the journal entry the trial court stated that the judgment should not in any way prejudice the rights or the interests of the plaintiffs in and to the judgment obtained by them against Carrie Young in the same action on September 29, 1928, in so far as the same pertained to a one-half interest in and to the remainder of the land owned by Jacob Young. That is the judgment the validity of which is in issue in this case.

At the time of the filing of the petition of the plaintiffs, Carrie Young was not within the state of Oklahoma, and personal service could not have been made upon her within the state of Oklahoma. On the date the petition was filed by the plaintiffs, an affidavit for service by publication was filed. On that date a notice by publication was issued by the court clerk. Therein September 28, 1928, was fixed as the answer day. On September 3, 1928, proof of publication of the notice by publication was filed in the office of the court clerk. It showed that the notice by publication was published on August 16, 23, and 30, 1928. On the 29th day of September, 1928, no answer had been filed and no appearance had been made in the action by or for Carrie Young. On that date the cause was submitted to the court for judgment. The court found that notice by publication had been regularly given and "that within six days after the first publication, a copy of said notice and copy of said petition herein were duly and properly mailed to the defendant Carrie Young on August 18, 1928, and as required by law." The court rendered a judgment, quieting the title to a one-half interest in the property in the plaintiffs, giving them the possession thereof, decreeing a partition of the real estate and appointing commissioners to make a partition thereof. Under date of August 27, 1928, the defendant Carrie Young executed a quitclaim deed to the land in question to one Rosa Foreman. A term of the district court of Tulsa county commences on the first Monday in November. Under date of January 18, 1929, one Rosa E. Foreman (admitted to be the same person as Rosa Foreman) filed a motion to set aside the order of sale and judgment rendered on the 29th day of September, 1928, and exceptions to the confirmation of the sale of the real estate in the partition proceedings. Therein she alleged that she had purchased the land in question from Carrie Young under date of August 27, 1928. Therein she offered to show that, at the time of the conveyance by Polly Young to Carrie Young, Polly Young was of sound mind. Under date of February 2, 1929, Carrie Young filed a similar motion. Under date of February 13, 1929, the plaintiffs filed a motion to strike the motions of Rosa E. Foreman and Carrie Young, and on the 16th day of February, 1929, that motion was sustained. Under date of February 20, 1929, Carrie Young and Rosa E. Foreman each filed an amended motion in which the conveyance by Carrie Young to Rosa E. Foreman was alleged and in which Carrie Young claimed to be a resident of Tulsa county. We think that no attention need be paid to the allegation as to residence, for the reason that the attorney for defendant Carrie Young, in asking for time in which to make a supersedeas bond, stated to the trial court that the defendant

Carrie Young "lives in California." Under date of April 5, 1929, Carrie Young and the said Rosa E. Foreman joined in a supplemental motion. Under date of June 25, 1929, the plaintiffs filed a motion to strike from the files and to refuse the motion of the defendant Carrie Young to vacate the judgment and order and exceptions to the confirmation of the sale, and, on the same date, they filed a similar motion to strike as to the objections of the said Rosa E. Foreman. On the 29th day of July, 1929, the trial court overruled the amended motions of the defendant Carrie Young and the said Rosa E. Foreman to vacate the judgment and granted the defendant Carrie Young and the said Rosa E. Foreman 30 days to make and serve case-made and 10 days for suggestion of amendments, the case-made to be settled on five days' notice. From that judgment and order Carrie Young and the said Rosa E. Foreman appealed to this court. Hereinafter they will be referred to as the plaintiffs in error.

The plaintiffs in error contend that "the court was wholly without jurisdiction of the subject-matter of this action to grant the relief asked by the defendants in error." That contention is based upon the theory that there was a misjoinder of legal and equitable causes of action which deprived the court of jurisdiction of the subject-matter. There was no misjoinder of causes of action. Section 266, C. O. S. 1921. Under our Code of Procedure there is but one form of action. Section 178, C. O. S. 1921. Notwithstanding the rule to the contrary in some jurisdictions, both a legal and an equitable action pertaining to the same subject-matter may be joined in one action in this jurisdiction. Herein it is not necessary that possession of real estate be acquired by a suit in ejectment prior to the filing of an action to quiet the title to the real estate or to partition the real estate. Section 466, C. O. S. 1921, provides that an action to quiet title to real estate may be joined with an action to recover possession of the real estate by any person not in possession. Tidal Oil Co. v. Flanagan, 87 Okla. 231, 209 P. 729, and American Investment Co. v. Usrey, 106 Okla. 202, 233 P. 1078. We think that under our Code the same rule is applicable where there is an additional prayer for partition of the real estate. See Beatty v. Beatty, 114 Okla. 5, 242 P. 766, and Chouteau v. Chouteau, 49 Okla. 105, 152 P. 373. The trial court had jurisdiction of the subject-matter of the action and jurisdiction to render the particular judgment rendered.

The judgment roll shows that the trial court had jurisdiction over the person of the plaintiff in error Carrie Young. The judgment was not void. The motions filed by the plaintiffs in error were not based upon jurisdictional grounds alone, but upon nonjurisdictional grounds as well. Where a party against whom a judgment is rendered files a motion to vacate the same upon the ground that the court had no jurisdiction over him, and said motion is based upon nonjurisdictional as well as jurisdictional grounds, appellant thereby enters a general appearance, as though said appearance had been made at the trial. Givens v. Anderson, 119 Okla. 212, 249 P. 339; Burnett v. Clayton, 123 Okla. 156, 252 P. 397; Bristow v. Scott, 124 Okla. 89, 254 P. 16, and Nolan v. Schaetzel, 145 Okla. 231, 292 P. 353. By the filing of those motions the plaintiffs in error entered general appearances in the cause. If there was any question as to the legality of the service upon the plaintiff in error Carrie Young, that question was waived by the entry of the general appearances in the action.

The term of the court at which the judgment was rendered expired prior to the filing of any of the motions by the plaintiffs in error. Notwithstanding that fact, neither of the plaintiffs in error attempted to conform to the provisions of section 256, C. O. S. 1921. The motions of the plaintiffs in error in no wise conform to those provisions. No answer to the petition of the plaintiffs was submitted for filing. There was no showing by affidavit or other evidence that during the pendency of the action either of the plaintiffs in error had no notice thereof in time to appear in court to make a defense. We cannot say that the trial court abused its discretion in refusing to vacate the judgment after the expiration of the term in which it was rendered on the facts shown by the motion of either of the plaintiffs in error.

The failure to file an affidavit of mailing notice prior to the rendition of judgment does not affect the validity of the judgment. There is no provision of law requiring the filing of such an affidavit. Compliance with the provisions of section 252, C. O. S. 1921, may be shown either by the filing of an affidavit or by proof to the trial court. The journal entry of judgment in question recites compliance with the provisions of that section. That finding became and is a part of the judgment roll. Woodley v. McKee, 101 Okla. 120, 223 P. 346.

The provisions of section 817, C. O. S. 1921, as to attacks upon void judgments, have no application to the facts in this case, for herein the judgment was not void.

We find no error in the judgment of the trial court, and that judgment is in all things affirmed.

RILEY, HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., absent. CLARK, V. C. J., and KORNEGAY, J., dissent.

---

KORNEGAY, J. (dissenting). I am compelled to dissent from the decision rendered in this case. As disclosed by the opinion itself, the service in this case was purely constructive, and, as I think, the decision is clearly destructive. It occurs to me that there was carefully kept from the district judge below, the fact that the land was distributed to the widow, Carrie Young, by decree of a probate court in the administration of the estate of Jacob Young, and that the deed that is attacked in this suit was made, during the progress of the administration, and that the judgment of the probate court found that Carrie Young was the entire owner of the property.

No effort was made to make the tenant that occupied the property at the time of the suit a party thereto for its recovery and damages for detention. Neither was any effort made to get into the hands of the officer, whose duty it was to serve a summons in an action in ejectment, any process from which it might be known by any one that an effort was being made to deprive the absent owner of her property by "res adjudicata," that she held, both by deed of record, and by virtue of the judgment of the probate court had in the administration of her husband's estate.

The deed of Polly Young, under whom the plaintiffs claimed, was set out at page 13 of the record as an exhibit to the petition, and was dated the 30th of August, 1921, and filed for record on the 19th of August, 1921, the suit in ejectment for a half interest being filed with a "lien claimed" appended to it the 10th day of August, 1928. The order of distribution and settling of the Young estate was not set out in the petition, and the publication appeared in the Sand Springs Leader of August 16, 23, and 30, 1928, instead of in one of the Tulsa papers with general circulation and near the property. Nowhere is there any intimation that an attack was being made upon the judgment

of the probate court, ascertaining the heirs and distributing the property. One branch of the case was disposed of by Judge James very much to the disadvantage of plaintiffs below, and another branch of it by Judges Hudson and Yager, very much to their advantage and the attorney owning "lien cliamed." At page 43 of the record a copy of the decree of the county court of Tulsa county, fixing the title to the land in the order of distribution, is as follows:

"It appearing further to the court that since the death of the said deceased, the said Polly Young did, on August 13, 1921, for a valuable consideration, convey to Carrie Young, all of her right, title, and interest in and to said real estate and that said Carrie Young has been since said date and is now the sole owner of said real estate

"It is, therefore, ordered, adjudged, and decreed by the court that the said real estate above described be, and the same is hereby assigned and conveyed, to the said Carrie Young forever, to have and to hold the same, together with all and singular the appurtenances thereunto appertaining forever.

"Witness my hand and seal of this court on this the 14th day of February, 1922.
"(Seal)          Z. I. J. Holt,
          "Judge of the County Court."

This, however, appears not to have been referred to directly or set out in the petition filed in this case, though it would appear to be highly essential to get rid of it.

As will appear from the majority opinion, it was a combined action to recover a half interest in ejectment and then proceed in partition. It appears in the application of Rosa Foreman to be made a party and to vacate the judgment, that she bought the land on the 27th of August, 1928, and that she had not been made a party to the proceedings, "nor has she had any knowledge of the pendency of the action until within the past week." This was filed the 18th of January, 1929.

In the application to be made a party defendant, she recited the proceedings that had been had theretofore, with reference to the sale, and stated that the lands were worth from $2,000 to $2,500. An attack was made upon the position of the plaintiff, with reference to setting aside the deed made by Polly Young, and averment was made of the deed's being valid. It is further stated that if permitted to enter the action and plead, and the judgment be set aside, and the cause is opened up, that she

can establish that Polly Young was at all times of sound mind, and that the movant had a good and valid title to all the property. Prayer was for denying confirmation of the sale of the land, and the setting aside of the judgment of the 29th of September, and the orders of sale, and to be allowed to plead in the case and defend the action.

In her amended motion, she more fully set out her source of title and her purchase without knowledge of the pendency of the action or claims of the plaintiff, and exhibits her deed, and denies the allegation of the petition with reference to the insanity of Polly Young, and sets up possession in herself and Carrie Young and Dora M. Lausen, and again sets out the proceedings and avers the value of the property and the disparity in the sale price. It is averred that the court was without jurisdiction to decree partition and to enter a judgment for the recovery of land by reason of the plaintiff's never having been in possession. A valuable consideration was pleaded as passing from Carrie Young, her grantor, to Polly Young, and the prayer again was for permission to plead and become a party.

As I view the matter on this showing, common fairness demanded that the party be let in to defend. She had substantially complied with the sections of the statute on the subject of a default judgment on constructive service. Her grantor likewise made application, so there could be no question as to one or the other or both having a right in the case. The reason assigned by the court for striking out both of their applications was somewhat unique and novel. The motion to strike assigns that Carrie Young had parted with her interest pending the suit, and her grantee had derived her interest pending the suit. However, I do not think that, under our law, such an excuse as that could be held valid for the reason that the statute provides that if a matter is assigned during the progress of the litigation, the suit continues.

It is the policy of our law, as far as possible, to have everybody interested in the litigation to be made a party. As applied to this present case, not even the most sanguine advocate of the rights of the plaintiffs below in this case could deny that Carrie Young and Rosa Foreman were at least interested in one-half of the property, and should have been allowed to become parties in order to defend that interest as against the lien claimed, but, by virtue of striking out, the court even denied

them that right. It does not appear, that the court was acting judicially in doing that, to the writer.

Section 158, Okla. Stat. 1931, is as follows:

"158. Interested Person May be Made Party. When, in an action for the recovery of real or personal property, any person having an interest in the property applies to be made a party, the court may order it to be done."

Most clearly, under that section, it was the duty of the court to let them in, as long as the partition proceeding was there, especially in view of the disproportional fee that had been allowed in the partition suit to the attorney, though not so high as it had been pitched in the pleadings, and in view of the sale for such an inadequate price, as this record shows, probably one-third, maybe less, of the actual value of the property. It is not deemed necessary to cite court decisions as to as simple a thing as that.

Whether the judgment, depriving them of one-half interest of the property, was gotten by due process of law or by legal mistake, they had an interest in this partition, and they had an interest in the confirmation or rejection of the sale, and they had an interest in cutting down the fees and expenses, and whether the lawyer employed by them handled the case technically or not, they had rights.

Section 157 of the same statute is imperative, as it seems to me. It is as follows:

"157. Necessary Parties May be Brought in by Court Order. The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

Section 156 of the same statute appears to me to be plain. It is as follows:

"156. Death of Party or Transfer of Interest—Continuance by or Against Successors or Transferees. An action does not abate by the death or other disability of a party, or by the transfer of any interest therein, during its pendency, if the cause of action survive or continue. In case of death or other disability of the party, the court may allow the action to continue by or against his representative or successors in interest, upon such terms and in such time as may be just under the circumstances presented. In case of any other transfer

of interests, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action."

Special stress is made in the briefs showing a desire to get into court and have their rights adjudicated after a hearing, but this court holds that they reached the station of "res adjudicata," before they started. I am inclined to the belief, however, that if there was nothing else in this case outside of the setting aside of the judgment, which undertakes to transfer, in an ejectment action, from the petitioners in error to the clients of the attorney of the plaintiffs in error, a one-half interest in this land, vested by purchase approved by the probate court, based on a finding of heirship while exercising the jurisdiction conferred by the Constitution, that there could be no escape from setting aside the judgment that was rendered on constructive service, such as was in this case.

The proceedings in this case do not come up to the standard of due process of law, nor do they follow the statutes or previous decisions of this court. It is not deemed necessary to discuss all the decisions of this court on the subject of submitting to its jurisdiction. I am sure that if the position relied upon in this case is based on court decisions, holding that, by making application to a court to correct its errors, the applicant thereby ratifies the judgment with all of its errors, they should be overruled as soon as possible, lest injustice be propagated instead of justice being established. This court and all other courts are built upon constitutional provisions, and one is as follows:

"Sec. 6. Courts of Justice Open—Speedy Remedy. The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

Section 7 of the same article is as follows:

"Sec. 7. Due Process of Law. No person shall be deprived of life, liberty, or property, without due process of law."

As shown by the record in this case, there was a very strong effort to deprive the widow of a Cherokee freedman, who happened to be temporarily away from Tulsa, but who had a tenant on the place, of a one-half interest in her property in the first instance, and later of all of it, by the framing of a suit, without summons issued, notwithstanding that our statute provides that in order to commence an action a summons must be issued. Section 164, Okla. Statutes 1931, is as follows:

"164. Civil Action Commenced by Filing Petition and Issuing Summons. A civil action may be commenced in a court of record by filing in the office of the clerk of the proper court a petition and causing a summons to be issued thereon."

Under that section numerous decisions of this court are found, and it looks as though from those decisions that there would have to be some kind of a judicial seizure of this property, and some effort made to notify the persons in possession of the pendency of the action, and that if a summons did not actually issue, constructive service of the summons could not be had.

It required a good deal of legal logic, prior to the time that we became a state, to convince a court that constructive service of the summons meant the same as issuing one and getting it served upon the party constructively. Had an attachment issued, or a receiver been appointed, or the person in possession been served with notice, the lower court might have gotten jurisdiction in this case by a "proceeding in rem." Section 166, Okla. Stat. 1931, prescribes certain indorsements would have to be on the summons that is actually served, and we have been more provident in looking out for the one that was served in person sometimes than one served as in this case. Our books are full of cases wherein the party failed to make certain allegations in the affidavits, wherein the courts have pronounced the proceedings void.

Section 188, Okla. Stat. 1931, provides for personal service out of the state, in which event it undoubtedly would be the service of the process issued by the clerk under the seal of the court. Section 188 is as follows:

"188. In all cases where service may be made by publication, personal service of summons may be made out of the state by the sheriff or his deputy of the county in which such service may be made. Such summons shall be issued by the clerk, under seal of the court, and directed to the defendant or defendants to be served, and shall notify him or them that he or they have been sued by the plaintiff or plaintiffs, naming him or them, and requiring him or them to answer the petition filed by the plaintiff or plaintiffs in the clerk's office of the court, which shall be named, within 60 days from the day of service, or the said

petition will be taken as true, and judgment rendered accordingly: Provided, that such service shall have the same force and effect as service obtained by publication, and no other or greater force or effect."

Section 189 is as follows:

"189. A party against whom a judgment or order has been rendered, without other service than by publication in a newspaper, may, at any time within three years after the date of the judgment or order, have the same opened, and be let in to defend. Before the judgment or order shall be opened the applicant shall give notice to the adverse party of his intention to make such an application, and shall file a full answer to the petition, pay all costs, if the court require them to be paid, and make it appear to the satisfaction of the court, by affidavit or other evidence, that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense; but the title to any property, the subject of the judgment or order sought to be opened, which, by it, or in consequence of it shall have passed to a purchaser in good faith, shall not be affected by any proceedings under this section, nor shall they affect the title of any property sold before judgment under an attachment. The adverse party, on the hearing of an application to open a judgment or order, as provided by this section, shall be allowed to present counter affidavits or other evidence to show that during the pendency of the action the applicant had notice thereof in time to appear in court and make his defense."

It seems to me that the courts have gotten themselves in a maze while dealing with expressions like "collateral attack," and "due process of law," and "intrinsic fraud," and "appearing on the face of the rolls," and like expressions, until like the Commissioner in Lynch v. Collins, 106 Okla. 134, 233 P. 709, we scarcely know where we are.

An inspection of the authorities cited for the position assumed by the court is strongly indicative of the fact that the court does not thoroughly appreciate what they have held. Loose expressions in former decisions have been hit upon from time to time, so that one would not recognize the original findings. It is common place that if a person appears in an action, the question of getting service on him is waived because the necessity for service no longer exists. That, however, is quite apart from the proposition of a judgment being founded on absolute injustice and the calling of attention of a court of justice to the iniquity that has theretofore been had against the informer. They are as unlike each other as the average quadruped is different from those who walk upright.

A review of the cases cited as a foundation for the opinion of the majority will show that Givens v. Anderson, 119 Okla. 212, 249 P. 339, was a Commissioner's decision, and that there was a replevin action originally followed by a suit on the bond in that case, and that personal service was had upon two of the defendants, and that all three of them appeared by an attorney, and asked for and were granted time to plead, and that they later made default.

Certain statements were made therein about the effect of the default, referring to Ziska v. Avey, 36 Okla. 405, 122 P. 722, which in turn made confusion of great magnitude, the trouble being that a waiver of personal jurisdiction by appearing and calling attention to the wrongs in the judgment, does not, in the nature of things, and should not, in the interest of justice, ratify the iniquity of the judgment, and could not be so held logically.

The second case of Burnett v. Clayton, 123 Okla. 156, 252 P. 397, is a case of a wife who said that the sheriff had not served her, though evidently from the report the records so showed. The court answered that in a case of that kind the matter should be investigated, but on the hearing the court finally held that she did not have any case, and confirmed the first judgment on the second hearing.

The third case of Bristow v. Scott, 124 Okla. 89, 254 P. 16, holds most clearly and rightfully that a general appearance waived the defects in getting service, and the fourth case of Noland v. Schaetzel, 145 Okla. 231, 292 P. 353, practically holds the same thing. The statement is made in the opinion, as follows:

"No answer to the petition of the plaintiffs was submitted for filing. There was no showing by affidavit or other evidence that during the pendency of the action either of the plaintiffs in error had no notice thereof in time to appear in court to make a defense. We cannot say that the trial court abused its discretion in refusing to vacate the judgment after the expiration of the term in which it was rendered on the facts shown by the motion of either of the plaintiffs in error."

The record shows that two applications were made in trying to get in the court, and that the court apparently did not go to the trouble of looking into them, but

just struck them out. In baseball parlance, they never got even to first base, though those applications, as it appears to me, were most clearly sufficient to call the court's attention to the situation, though not as technical perhaps as some long-experienced attorney might be able to draft.

The party who had bought the land, Rosa Foreman, in her application, described the 30 acres and set up the deed from her grantor to her, and its recording, and the nature of the action of the plaintiff, and avers, "that this movant has not been made a party defendant to this action, nor has she had any knowledge of the pendency of the action until within the past week." This appears to have been filed in the district court on the 18th of January, 1929. The numbers of the land show it to be in the southeast quarter of section 4, township 20 north, range 13 east, which would put it northeast of Tulsa just a few miles, and nearer to Tulsa in all probability than Sand Springs. She averred further at page 50:

"This movant will be able to show by good and sufficient proof, if permitted to become a party to this action, and the judgments and orders heretofore made, be set aside, and the cause opened up, that the said Polly Young was at all the times herein mentioned of sound mind and fully capable of contracting and conveying her said property and that this movant has a good and valid title to all of said property."

In a great many particulars, adapting herself to her surroundings, the original defendant made a similar application. One cannot believe that a motion to strike indicates a great desire on the part of the movant to have a free and fair investigation, especially when it is worded like the motion that was sustained in this case. The reason for the motion to strike Carrie Young's motion was:

"(1) The motion of Carrie Young because the record shows that she has sold all her right, title and interest in the real estate involved herein to defendant Rosa Foreman and she has no further interest herein.

"(2) The motion of said Carrie Young is insufficient to entitle her to any relief herein."

The objection to Rosa Foreman's motion was as follows:

"* * * Because she took whatever interest she had subsequent to and subject to the litigation involved in this action, and her title, if any she has, is subject to

this action, and the judgment rendered herein and her deed is void.

"4. The motion and objection of said Rosa Foreman does not state facts sufficient to entitle her to any relief."

It seems to me that service based on the affidavit of an attorney, so much interested as this one was in the proceedings, asking for $500 fee and lien claimed, is rather unsafe, but when one examines the petition in this case, and considers its wording, and the failure to make the tenant on the place a party, who would know something about it, and considering the length of time that the deed had remained unattacked, and the admission of possession in defendant, and a demand for damages for having held it, an inspection by the judge below should have raised at least an inquiry.

When one examines the second cause of action, and the third cause of action, seeking the partition without any previous effort at all to bring about a partition, either in the administration of the estate of the allottee or the mother of the allottee, and there is no allegation with reference to the guardian's having applied to the probate court for leave to bring the action, and the demand for attorney's fee, coupled with the affidavit filed the same day to obtain service by publication, and a complete failure to have a summons issued either for Carrie Young or for her grantee, who seems to have discovered the pendency of the action some way, one would have to blind himself not to recognize the purpose of the proceeding.

The statement is made in the affidavit as to the whereabouts of Carrie Young, as follows:

"That the last-known place of residence or business of said Carrie Young was at Rural Route No. D, Box 33, Modisty, California"

—and there is an allegation that Dora M. Lausen's residence or place of business was not known to the plaintiffs or the affiant, and could not be ascertained by any means in their control, and a statement of belief that she was a nonresident of the state of Oklahoma.

The publication was in the Sand Springs Leader, instead of the Legal News or a Tulsa paper, that would probably have attracted the attention of some one interested on the other side. The first publication was August 16, 1928. The judgment was taken about as soon as they could take it. The affidavit of having mailed to defendant

a copy of the newspaper publication, was filed for the first time on the 8th of October, 1928, though the judgment was rendered prior to that time on the 29th of September.

Woodley v. McKee, 101 Okla. 120, 223 P. 346, is appealed to as a justification for the holding. However, when one examines that he will find that there the plaintiff at the trial showed under oath that he did not know the whereabouts of the party so that he could send a written notice. In a case of this kind, the law requires the proof of service to be filed and approved, before taking judgment. See section 254, C. O. S. 1921. Most clearly, to complete service by publication, the statute requires proof of mailing copy of the publication.

It occurs to the writer that it is well once in a while, in the midst of a multitude of cases and their complexity, and the webs that have been spun so promiscuously, to look to the sources of the law, and reasons for the law. Accordingly, this quotation from Black on Judgments, section 312, is here made, as follows:

"The statutes in some of the states provide that a nonresident defendant who has been constructively served by publication of summons, and against whom a judgment is given, may appear and have the judgment vacated and be admitted to defend the action, at any time within a limited period after the rendition of the judgment, which period varies, in the different states, from six months to five years. And the right thus given entitles the defendant, if he comes in within the prescribed time, to assert his rights as fully in every respect as he could have done if personally served before judgment, saving the intervening rights of third persons. And the right of a defendant, under these statutes, to be let in to a defense is an absolute right if he brings himself within the statute; the court has no discretion in the matter, but must grant his application."

The 107th citation contained therein is a case of Albright v. Warkentin, 31 Kan. 442, 2 P. 614. The remarks of Justice Brewer in that case are refreshing, when contrasted with the pitfalls that have arisen by construction of Kansas cases. To start with, it is clear that the question of service is a primary matter of inquiry before entering any judgment, and that service may be actual or it may be constructive. To say that if a man calls the attention of the court to the injustice of a judgment, which goes, of course, to the merits, and has nothing to do with the question of

service, he thereby ratifies that judgment, rendered in his absence and without notice, by the machinations of those who were after his property, is to remind one of the Bible, where it is asked if a son should ask for bread if the parent would offer a scorpion.

Justice Brewer, in the case cited by Black, discusses the matter most fully, and his language in part is as follows:

"* * * On June 3, 1881, the plaintiff moved to strike from the files the affidavit and answer of the defendant on the ground that neither was verified, as required by law. This motion was overruled, and thereupon, on application of the defendant, leave was given to him to file an amended application within 60 days. After the expiration of the 60 days, and the 6th of August, 1881, defendant, showing reasons for his delay, obtained leave to file such amended application at any time before the 10th of August, and before that time filed an amended affidavit and answer. Thereafter, on the 28th of August, 1882, the application coming up for hearing, the court refused to open the judgment, and let the defendant in to defend. Upon this ruling the defendant comes to this court. This application was made under section 77 of the Code, which provides that 'a party against whom a judgment or order has been rendered, without other service than by publication in a newspaper, may, at any time within three years after the date of the judgment or order, have the same opened, and be let in to defend.' By this section three things are required: First, that the applicant give notice; second, that he file a full answer, and, if required by the court, pay all costs: and, third, that he make it appear to the satisfaction of the court by affidavit that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense. Now, the original application fully complied with all these requisites. It was filed within three years, in fact, within two years; notice was given. No question is made as to its sufficiency, and indeed could not be, for if there was any defect in it, it was waived by the appearance of both parties in court. The answer contained a full defense, showing that the defendant was the actual owner of a one-twelfth interest in the land. His affidavit alleged positively that he had no personal knowledge whatever of the pendency of said suit until after the rendition of the judgment. The objection to this affidavit is that it states that defendant had no personal knowledge; while the language of the statute is that he had no actual notice. The subsequent affidavit uses the language of the statute, but we think the original affidavit sufficient, and that an allegation

of a want of personal knowledge is, for the purposes of this section, equivalent to allegation of a want of actual notice.

"* * * We think the rule correctly stated by Mr. Justice Maxwell, of the Supreme Court of Nebraska, in his work on Pleadings & Practice (3d Ed.) 68, as follows: 'The application may be made as a matter of right, and when a party brings himself clearly within the statute the court has no discretion, in the matter, but must grant the application.' See, also, Beckwith v. Douglas, 25 Kan. 235. The statute, it is true, says that the court must be satisfied, but it also provides that it is to be satisfied by affidavit, and we can examine the affidavit as well as the trial court and determine whether it was such as ought to have satisfied, and if it ought, we must hold it sufficient. Indeed, in order to do justice to both parties, the provisions of that section should be construed in no technical way, but fairly and reasonably. Every party ought to have his day in court; and while service by publication, which, in fact, imparts no actual notice, must be sustained, yet a party thus served, and who has in fact no knowledge of the proceedings, ought to be granted a hearing if it can possibly be done consistent with the rights of other parties. The section provides ample protection to third parties dealing with property on the faith of the judgment, and the plaintiff certainly has no right to complain if, within a reasonable time, which by the statute is fixed at three years, the defendant demands an opportunity of litigating with him the justice of the claim. In fact, a judgment upon service by publication is, as between the parties, in the nature of a conditional judgment, one which becomes final and absolute only at the expiration of three years, and liable in the meantime to be opened whenever the defendant brings himself within the provisions of the section. We think, therefore, that the original application was sufficient; and, being sufficient, the defendant had a right to have the judgment opened and be let in to defend. But, further, the original application having been filed within time, and such as unquestionably to challenge the consideration of the court, it had, under sections 106 and 139, the right to permit amendments of the application."

As applied to the present case, it seems to me that the provisions of the Constitution about the courts being open has literally been true so far as the plaintiffs in this case were concerned. They had a complete entre into the court by substituted service and were not held to strict observance. However, as to the opposite parties, it seems that the way was practically closed, and so far as the courts being open for them in the defense of their property, as against the ef-

forts of those desiring it, the doors were closed and the windows fastened.

Black, 906, cites Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, this being the parent and leading case on the subject of how far one can go under constructive service. By the decision here announced on constructive service, it is held that the defendants, by appearing and showing to the court that the judgment was unjust, thereby barred themselves by the judgment, and cannot complain of it, either in the lower court or here. Such a holding undoubtedly violates the federal Constitution, as well as our own, under the due process of law provisions. It violates the natural law of justice. Pennoyer v. Neff most clearly so declares, and the case from Texas, decided by the Supreme Court of the United States, in York v. State of Texas, 34 L. Ed. 604. The statement of the fourth syllabus as to other service under section 256, evidently is based on Lynch v. Collins, 106 Okla. 133, 233 P. 709, rendered by Commissioner Stephenson. As disclosed by the opinion, the plaintiffs in error in that case originally owned the land and a guardian's deed had been made, and the beneficiaries of the guardian sale had strengthened their title by an action in the district court to quiet title. In that action service was had by publication, and completed by sending copies of the publication notices and petition to plaintiffs in error at Coffeyville, Kan., the place of residence of the plaintiffs in error. The judgment was rendered on March 23, 1920, quieting title in defendants in error. The judgment found legal service to have been had on the minors, and an appearance in the cause by guardian ad litem of the minors, appointed by the court. Two years and ten months thereafter, the plaintiffs in error filed their application, alleging that they did not receive actual notice of the pendency of the cause prior to judgment, and alleging that the judgment was void for the reason that the guardian's deed relied on by the plaintiffs in the suit to quiet title was void. Evidently a trial was had. It is strongly probable that the judgment of the county court, confirming the guardian's sale, was attacked. The Commissioner, in giving his opinion, says:

"No equitable questions are presented by the attack on the judgment, and in the appeal."

And:

"The second ground assigned by the plaintiffs in error to set aside the judgment is a collateral attack. The judgment of a court

of general jurisdiction is not subject to collateral attack unless the judgment is void on its face."

Quite a discussion is had as to due process of law, as distinguished from jurisdiction. It is recited:

."Service was had upon the defendants in this action in the way and manner prescribed by law, which is not questioned by them. The judgment recites that a guardian ad litem was appointed for all minors, and defended the action for them. The particular point made by the defendants is that the deed through which the plaintiffs claimed was void, and that the latter were not entitled to the possession of the real estate. The answer to this charge is that the validity of the deed through which the plaintiffs claimed was the particular question which the action presented to the court. The trial of the action, in the main, involved the validity of the deeds. The court had jurisdiction of the subject-matter and service had been completed upon the defendants in the way and manner prescribed by law."

Evidently, from the language used, the Commissioner was confused as to the collateral attack on a judgment. The deduction is made in this case that because Justice Brewer in Lewis v. Lewis, 15 Kan. 181, had held that in a divorce case the court would not set aside a divorce decree under a similar provision, simply on application therefor, a decree concerning property would not be reopened under section 256, C. O. S. 1921. It was not necessary to so declare in the case before the Commissioner, and Justice Brewer had not made declarations from which it could reasonably be inferred that he would have so held in a property case. His decision was limited to a divorce action and based on the peculiar situation before him, the nature of divorce and rights acquired thereunder. He put humanity higher than money.

Prior to 1910, mailing of copy of petition and of publication was not required to complete service by publication in a land quieting suit. In order to add something that would prevent "snap judgments" evidently the codifier inserted this provision. However, the construction placed on this section by the court here, practically destroys the section on the subject of being let in to defend, and renders it nugatory. Under this decision it would have no field for application. As applied to the present case, the application showed a meritorious defense, and the record showed a fraud on the court in not disclosing the true effect of the probate decree, vesting in the wife all the property under section 1367, C. O. S. 1921, as follows:

"1367. When part has been conveyed by heir. Partition or distribution of the real estate may be made as provided in this chapter, although some of the original heirs, legatees, or devisees may have conveyed their shares to other persons, and such shares must be assigned to the person holding the same, in the same manner as they otherwise would have been to such heirs, legatees, or devisees"

—and section 1359, as follows:

"1359. Distribution. Upon the final settlement of the accounts of the executor or administrator, or at any subsequent time, upon the application of the executor or administrator, or of any heir, legatee or devisee, the court must proceed to distribute the residue of the estate in the hands of the executor or administrator, if any, among the persons who by law are entitled thereto; and if the decedent has left a surviving child, and the issue of other children, and any of them, before the close of administration, have died while under age and not having been married, no administration on such deceased child's estate is necessary, but all the estate which such deceased child was entitled to by inheritance, must, without administration, be distributed to the other heirs at law. A statement of any receipts and disbursements of the executor or administrator, since the rendition of his final accounts, must be reported and filed at the time of making such distribution, and a settlement thereof, together with an estimate of the expenses of closing the estate, must be made by the court and included in the order or decree, or the court or judge may order notice of the settlement of such supplementary account, and refer the same as in other cases of settlement of accounts"

—and section 1360 is as follows:

"1360. Rights Fixed by Decree. In the order or decree, the court must name the persons and the proportions or parts to which each shall be entitled; and such persons may demand, sue for and recover their respective shares from the executor or administrator, or any person having the same in possession. Such order or decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal."

The case of Lewis v. Lewis, cited above, from Kansas, relied on and used to deprive the petitioners in error here of the benefit of section 189, Okla. Stat. 1931, section 256, C. O. S. 1921, was a divorce case. The plaintiff had married between the granting of the divorce and the application to set aside, and had a child by the last wife. The defendant had sued for alimony in the courts

of Scotland some months before the child was born, and evidently made the application to set aside the divorce without regard to the new relations that existed. The lower court felt bound to let her in to defend. Justice Brewer found there was no fraud or trickery had, and the second wife had acted in good faith and the marriage and birth happened before the hearing. He held the statute had been complied with as to service, practically conceding that the ruling would be the other way in any other case, and said a divorce decree could not be set aside on a "mere showing of actual ignorance of the pendency of the suit." He reviewed the cases, and expressed grave doubt of the correctness of the conclusion as to the party's application not having come within the statute. In the body of the opinion he says:

"It must be apparent, too, from the cases noticed, that ofttimes the hardship of an adverse ruling, if it has not directly led to the decision made, has induced the court to magnify matters of minor importance into circumstances of controlling weight. At the risk of being subjected to a like criticism, we are constrained to hold that section 77 does not apply to proceedings for divorce."

The case here presented is one wherein the defendant has never had a hearing or an opportunity to be heard. · The decree was entered without the filing of affidavit of mailing copy of petition and publication, the affidavit being filed several days later, and showing that there was a material difference in the post office given in the affidavit for publication and in the one of mailing, both in sound and spelling, the first being "Modisty," the second "Modesto." There is grave doubt, under the decisions, as to whether the original action here is maintainable, or substituted service can be had at all, there being no service on the actual occupant of the land, or service in any form or possession in plaintiff or actual notice to the owner. It was an ejectment case, dependent for legal success upon setting aside a deed and a court decree. The decree was not pleaded, but existed as to distribution. The decision here turns the parties, applying to defend themselves and their property, out of court, without an opportunity to be heard, and thereby depriving them of one-half interest in a piece of land that cannot be taken by ejectment except after trial. Evidently the case was never set for trial. To use Justice Brewer's decision, rendered apologetically to advance justice and to prevent the bastardizing of a child, as a basis for a denial of justice and deprivation of property, in der-

ogation of a decree of distribution duly given and rendered, savors somewhat of the sacrilegious. So far as the relief afforded by this court is concerned, in a most meritorious case, the widow's cry is unheard. I trust that my associates may yet follow the ancient prophet who says: "Learn to do well; Seek judgment, relieve the oppressed, judge the fatherless, plead for the widow." (Isaiah, 1:17).